J. C. WYNNE and General Insurance Company of America, Appellants,

v.

UNITED STATES of America, for the Use of MID-STATES WATERPROOF-ING CO., Inc., Appellee.

No. 9242.

United States Court of Appeals Tenth Circuit.

Aug. 28, 1967.

Melvin F. Pierce, Oklahoma City, Okl. (John R. Couch, and Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, Okl., of counsel, with him on the brief), for appellants.

William L. Fry, Wichita, Kan., for appellee.

Before LEWIS, BREITENSTEIN and SETH, Circuit Judges.

SETH, Circuit Judge.

This is an action commenced by a subcontractor against the prime contractor and brought pursuant to the Miller Act (40 U.S.C.A. § 270a et seq.). The complaint of the use plaintiff, who is the appellee herein, asserted a breach of the contract between the parties and claimed damages. The plaintiff recovered in the trial court, and the prime contractor has taken this appeal.

The work out of which the controversy arose was on water storage tanks on a Government project, and the use plaintiff as subcontractor undertook to do or have performed the sand blasting and painting of the tanks. Under the contract the appellant prime contractor was to furnish the paint for appellee's use, and the record shows that the paint so provided when applied was not acceptable to the Government. Additional sand blasting and additional coats of paint were re-

quired before the work was accepted. The record also shows that samples of the paint had been tested by the Government and were accepted, but that the problem arose in the application of the paint. The Government contracting officer found that the problem was caused by " * * * some latent quality in the particular batch of paint used," and that this " * * * was beyond the control and without the fault or negligence of the contractor." The trial court, as indicated above, found that by reason of the reaction of the paint when applied, additional work and materials were required of plaintiff to complete the painting of the tanks.

The trial court concluded that the measure of recovery by the plaintiff against the prime contractor for labor and materials furnished " * * * after breach by the general contractor is the reasonable value of the work and materials furnished, plus overhead and profit, whether the theory of recovery be called a contract in fact, a quasi contract, or promissory estoppel."

On this appeal, two principal issues are raised by the appellant. The first concerns the period of limitation set forth in the Miller Act. The second point is whether the evidence sustains the finding of a breach of contract and, if so, whether the damages were "improperly assessed."

As to the limitations issue, the record shows that the initial complaint of the use plaintiff was filed within one year of the completion of the work, and so within the limitation provided by the Act. This initial complaint of the plaintiff-appellee however described the defendant-appellant only as "The Bering Company," and stated that it was a corporation with its "home office in Dallas, Texas, 3530 Singleton Boulevard." The directions for service were that it be served on a corporate official. The return of the marshal showed that copies of the summons and this complaint were served " * * * on the within named The Bering Co. by leaving the same in the hands of J. C. Wynne, Owner, at his office 3530 Singleton Blvd., Dallas, Texas." The copy of the *contract* attached to the complaint so

served, and from which this dispute arose, describes the defendant as "The Bering Company Tank Division, 3530 Singleton Blvd., Dallas, Texas," and was signed "The Bering Company Tank Division By: C. L. Hammond." During the course of depositions, it developed that the contract was actually between J. C. Wynne, a sole proprietorship, d/b/a The Bering Company Tank Division, and the plaintiff. The plaintiff accordingly amended its complaint to change the description of the defendant, and the amended complaint was filed following the expiration of one year from the completion of the contract. The appellant contends that the period of limitation had expired when the amended complaint was filed, and the plaintiff by such an amendment could not effectively so change the party-defendant from a corporation to a sole proprietorship.

The record shows that the service of the initial complaint was had, as above described, upon J. C. Wynne as owner of "The Bering Co." and a copy of the contract between the parties was attached to the complaint. The cause of action arose under this contract and there could be no question on the part of the appellant herein as to notice, nor the fact that the action therein alleged arose under the contract between himself and the use plaintiff. The record shows that the defendant Wynne owned or controlled other corporations in Texas, but he testified that the first summons and complaint were directed to him " * * * as an officer or a president of The Bering Corporation, a Texas corporation, which he had nothing to do with; as far as I know it's non-existent."

■ The amended complaint was filed in October 1963; the trial was held in September 1966, and judgment entered in October 1966. Rule 15(c) of the Federal Rules of Civil Procedure was amended in February 1966 to be effective on July 1, 1966. The order of the Supreme Court provided the effective date, and for the application of the amended rules to pending actions in the same terms which had heretofore appeared as amendments to

Rule 86. This amendment makes specific provision for the relation back of an amendment to the pleadings changing the party against whom a claim is asserted regardless of the period of limitations if certain conditions are met. These conditions have here been met, and no reason appears why the rule should not be applied. The trial court was thus correct in its conclusion that the amendment related back and thus the action was instituted within the time provided by the Miller Act.

On the issue of breach of contract and the measure of damages, the record shows as above indicated that the defendant-appellant provided paint which, when applied, did not pass the Government inspection and that the defendant had undertaken in its contract with the plaintiff to provide paint meeting the Government standards. The trial court concluded that the defendant did not perform its portion of the contract, and that the failure to provide suitable paint caused the additional work and labor to be performed by and on behalf of the plaintiff. The record amply supports these findings and conclusions. This additional work was performed by the plaintiff and also by a painting firm which the plaintiff engaged to do a portion of the work. Additional expenses were incurred by plaintiff also. The record establishes the cost of this work and materials. The appellant objects that the painting firm which did a portion of the work added to its labor costs a percentage for overhead, insurance, and profit, and that the total thereof was charged to the plaintiff, and by it in turn to the defendant in its invoices and included in its complaint herein.

We held in Wunderlich Contracting Co. v. United States ex rel. Reischel & Cottrell, 240 F.2d 201 (10th Cir.), that overhead and profit may be used in determining the value of the work completed under similar circumstances. There is no showing that the rule should be otherwise in the case at bar. We have also held in a case arising in Kansas, Southern Painting Co. of Tenn. v. United States, 222 F.2d 431 (10th Cir.), and also in Fanderlik-Locke Co. v. United States, 285 F.2d 939 (10th Cir.), that quantum meruit may be used as a measure of recovery in Miller Act cases, and that all costs may be considered. See also St. Paul-Mercury Indemnity Co. v. United States, 238 F.2d 917 (10th Cir.). The record here shows that the additional work to be done by the plaintiff consisted of more sand blasting, and the application of additional coats of paint. To accomplish this work, it was of course necessary to incur additional labor and material costs, overhead, and, on the part of the second tier subcontractor painting company, additional profit. This work thus had the same components as had the initial work which proved to be ineffective. We find no error in the findings of the trial court as to the dollar amount of damages nor its conclusion as to the measure of damages.

Affirmed.